## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* SUZANNE MEHAFFEY,<br><br>    *Plaintiff/Relator*,<br><br>v.<br><br>PULSE HEALTHCARE SYSTEM LLC, GAURAV AGGARWALA, and RELVERT J. COE, JR.,<br><br>    *Defendant.* | Civil Action No. **4:21cv983-SDJ**<br>_____<br><br>JURY TRIAL DEMANDED<br><br>FILED *IN CAMERA* AND UNDER SEAL<br>31 U.S.C. § 3730(B)(2) |

### ORIGINAL COMPLAINT

This is an action brought on behalf of the United States of America by Relator Suzanne Mehaffey, by and through her counsel, against Defendants Pulse Healthcare System LLC, Gaurav Aggarwala, and Relvert J. Coe, Jr. under the *qui tam* provisions of the federal False Claims Act, 31 U.S.C. § 3729 *et seq*., and in support thereof respectfully alleges as follow:

### I.  INTRODUCTION

1.    Pulse Healthcare System LLC ("Pulse") provides general healthcare services to Texas residents. It has nine locations across Texas, including two offices in the Eastern District of Texas. Dr. Gaurav Aggarwala founded Pulse, and Dr. Relvert J. Coe, Jr. is employed there.

2.    Relator worked in Pulse's Huntsville clinic as a nurse practitioner. While working at Pulse, Relator learned that Pulse routinely misidentifies the healthcare provider on claims submitted to federal payors, including claims for complicated medical procedures performed by unqualified nurses and medical assistants, in order to fraudulently increase the amount of reimbursement—all at the direction of its manager-member, Aggarwala. As explained below,

Pulse, Aggarwala, and Coe have engaged in a systematic defrauding of Medicare, Medicaid, and TRICARE.

## II. PARTIES

3.      Relator Suzanne Mehaffey is a citizen of the United States who resides in Bryan, Brazos County, Texas. She worked as a nurse practitioner at Pulse's Huntsville clinic from April 2021 to September 2021.

4.      Prior to filing this suit, and in accordance with the False Claims Act, Relator voluntarily provided the United States Attorney for the Eastern District of Texas and the Attorney General of the United States with a written disclosure statement that included substantially all material evidence related to this case that she possesses.

5.      Relator is unaware of any public disclosures of the allegations against Pulse Healthcare System LLC, Gaurav Aggarwala, or Relvert Coe, Jr., or the transactions described in this Complaint.

6.      To the extent that there has been a public disclosure of the allegations or transactions, Relator is the original source who has independent knowledge of the allegations and transactions described herein and voluntarily provides this information to the Government before filing this action.

7.      Relator brings this action on behalf of the United States of America, who is the real party in interest in this matter.

8.      Defendant Pulse Healthcare System LLC is a Texas limited liability company. Pulse can be served with process by serving its registered agent, Dossey & Jones, PLLC, at 25025 I-45, Suite 575, The Woodlands, Texas 77380.

9.      Upon information and belief, Defendant Gaurav Aggarwala can be served in The Woodlands, Texas.

10.     Upon information and belief, Defendant Relvert J. Coe, Jr. can be served in Palestine, Texas.

### III.    JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345 and 31 U.S.C. § 3732(a).

12.     This Court may exercise personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which provides for nationwide service of process and permits this Court to exercise personal jurisdiction over all defendants if any one defendant can be found, resides, or transacts business within this judicial district, or if at least one act proscribed by the 31 U.S.C. § 3729 occurred within this judicial district. Here, jurisdiction is proper because Pulse transacts business in the Eastern District of Texas.

13.     Venue is proper in the Eastern District of Texas under 31 U.S.C. § 3732(a) because Pulse transacts business in the Eastern District of Texas.

### IV.    GOVERNMENT HEALTHCARE PROGRAMS

A.    MEDICARE

14.     Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, establishes the Health Insurance for the Aged and Disabled Program ("Medicare"). The Secretary of the United States Department of Health and Human Services ("HHS") administers Medicare through the Centers for Medicare and Medicaid Services ("CMS").

15.     Medicare is composed of several parts. Medicare Part A provides basic insurance for the costs of hospitalization and post-hospitalization care. *Id.* § 1395c. Medicare Part B is a federally subsidized, voluntary insurance program that covers certain non-hospital medical services and products. *Id.* §§ 1395k, 1395*l*, 1395s. Medicare Part D provides voluntary prescription drug benefits for qualified seniors and disabled persons.

16.     To assist in the administration of Part B of the Medicare Program, CMS contracts with Medicare administrative contractors ("MACs"). *Id.* § 1395u. MACs are also referred to as "carriers" in Medicare's regulations. MACs are responsible for processing the payment of Part B claims to providers on behalf of CMS. *Id.*

17.     Under Part B, Medicare typically pays eighty percent of "the reasonable charges for the services." *Id.* § 1395*l*(a)(1). "The law allows for flexibility in the determination of reasonable charges" and provides several criteria for determining when charges are "reasonable." 42 C.F.R. § 405.502(a)(1)–(10). The "reasonable charge is determined by the carriers (subject to any deductible and coinsurance amounts as specified in §§ 410.152 and 410.160 of this chapter)." *Id.* § 405.501(a).

18.     Medicare permits qualified physician extenders, such as physician assistants, nurse practitioners, and clinical nurse specialists, to perform and bill for certain professional services typically provided by a physician. Medicare's reimbursement rate for physician extenders, however, is eighty-five percent the rate of a physician's for the same service. *See* CTRS. FOR MEDICARE & MEDICAID SERVS., MEDICARE CLAIMS PROCESSING MANUAL, ch. 12, §§ 110, 120.

B.     MEDICAID

19.     Title XIX of the Social Security Act ("Medicaid" or the "Medicaid Program") established "a nationwide program of medical assistance for low income families and individuals." *W. Va. Univ. Hosps. v. Casey*, 885 F.2d 11, 15 (3d Cir. 1989), *aff'd*, 499 U.S. 83 (1991), *superseded on other grounds by* 42 U.S.C. § 1988(c); *see* 42 U.S.C. § 1396 *et seq.*; 42 C.F.R. § 430.0.  The Medicaid Program is jointly funded by the federal government and participating states. *Harris v. McRae*, 448 U.S. 297, 308 (1980). The amount of federal funding in a state's program (Federal Financial Participation) is determined by a statutory formula set forth in 42 U.S.C. §§ 1396b(a) and 1396d(b). States electing to participate in the Medicaid Program must establish a plan for

providing medical assistance to qualified beneficiaries. *Id.* § 1396a(a)–(b); *see* 42 C.F.R. §§ 430.0–.25; CTRS. FOR MEDICARE & MEDICAID SERVS., STATE MEDICAID MANUAL § 13025. In exchange, the federal government, through CMS, pays out the federal portion of the expenditures made by the states to providers, and ensures that states comply with minimum standards in the administration of the Medicaid Program. 42 U.S.C. §§ 1396a, 1396b.

20.    Every state that elects to participate in the Medicaid Program must establish and maintain a state plan consistent with federal law. State plans must be reviewed and approved by CMS.

C.    TRICARE/CHAMPUS

21.    TRICARE, formerly known as the Civilian Health and Medical Program of the Uniformed Services, or "CHAMPUS," is a healthcare program for members of the military, retirees, and their families. *See* 10 U.S.C. § 1072(7); 32 C.F.R. § 199.17.  A person may be eligible for TRICARE if that person is (1) an active-duty service member, (2) a military retiree, (3) a family member of an active duty service member or military retiree, (4) a member of the National Guard/Reserves on active duty for 30 days, or (5) a family member of someone who is in the National Guard/Reserves on active duty for 30 days.

## V. APPLICABLE STATUTE

22.    The federal False Claims Act (the "FCA"), 31 U.S.C. §§ 3729–33, provides, *inter alia*, that any person who (1) knowingly presents, or causes to be presented, to the United States a false or fraudulent claim for payment or approval; (2) knowing makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim made to the United States; (3) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money

or property to the Government, is liable to the United States for a civil money penalty, plus treble damages; or (4) conspires to violate any provision of the Act, *id.* § 3729(a)(1), including those listed above, is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 plus three times the amount of damages which the Government sustains because of the act of that person. *Id.* § 3729(a)(1)(A)–(C), (G).

23.     The FCA defines the terms "knowing" and "knowingly" to mean "that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." *Id.* § 3729(b)(1)(A)(i)–(iii). Moreover, these terms "require no proof of specific intent to defraud." *Id.* § 3729(b)(1)(B).

## VI.    DEFENDANTS HAVE SYSTEMATICALLY DEFRAUDED THE FEDERAL GOVERNMENT THROUGH FALSE OR FRAUDULENT BILLING PRACTICES

24.     For the roughly five months she worked at Pulse, Relator regularly witnessed false billing practices, as Pulse blatantly overcharged Medicare and other federal payors on the orders of Aggarwala.

25.     Pulse's fraud is not complicated—Pulse regularly billed federal payors as if Aggarwala provided the services, when in fact the services were provided by someone else. This fraud breaks down into three basic schemes.

26.     First, Pulse often provided complicated medical services, such as the implantation of artificial skin grafts and the injection of sclerotic agents into varicose veins, through unqualified registered nurses or medical assistants but billed the services as if Aggarwala performed them. Aggarwala did not perform the services rendered, nor was he in the proper vicinity of the individual performing such services in order to supervise. These services are ineligible for Medicare coverage because they must be performed by or under the supervision of a physician or physician extender.

27. Second, Pulse and Aggarwala commonly represented that Aggarwala rendered services even though the services were provided by nurse practitioners. This practice caused the federal government to overpay for the services rendered because reimbursement is higher for physicians than for physician extenders, such as a nurse practitioner. *See Shah v. Azar*, 920 F.3d 987, 993 & n.17 (5th Cir. 2019).

28. Third, Defendants conspired to submit claims to Medicare for services performed or supervised by Coe as if Aggarwala performed them. These claims are ineligible for Medicare reimbursement because Coe was suspended from Medicare eligibility on account of a felony plea deal.

29. Relator has specifically identified several examples of Defendants' fraudulent practices.

30. First, there is Patient A. He visited Pulse's Huntsville clinic four times during 2021 prior to Relator's tenure at Pulse: February 11, March 2, March 18, and March 25. The Current Procedural Terminology ("CPT") code billed on February 11 was 99214 (outpatient evaluation and management, 30–39 minutes). The CPT codes billed on March 2 were 15271 and 15272 (artificial skin grafts), and the Healthcare Common Procedure Coding System ("HCPCS") codes billed were Q4121 (JC) and Q4121 (JW) (item codes for the artificial skin grafts). The codes billed on March 18 were Q4121, 15271, and 15272. The codes billed on March 25 were Q4121 (JC), Q4121 (JW), 15271, and 15272.

31. Patient A is a Medicaid recipient. In this instance, a registered nurse at Pulse named Mary Vallery ("Vallery") performed the services on Patient A, Coe charted the visits as though he had performed the services, and Aggarwala billed as though he had done so.

32.     Second, Patient B visited the Huntsville clinic on September 20, 2021. The CPT code billed that day was 36465 (injection of non-compounded foam sclerosant with ultrasound compression).

33.     Patient B is a Medicare recipient. For Patient B, registered nurse Tara Panky ("Panky") performed the services on him—even though charted and billed as if Aggarwala performed the services.

34.     Third, there is Patient C. She visited Pulse's Huntsville clinic on August 27, 2021. The CPT code billed that day was 36465.

35.     Patient C is a Medicare and TRICARE recipient. As with Patient B, Patient C's services were performed by Panky and were subsequently charted and billed under Aggarwala.

36.     Finally, Patient D received treatment at the Huntsville wound clinic on July 16, 2021, and August 6, 2021. The CPT codes billed on July 16 were 99214, 11721 (debridement of abnormal, disease, or infected nails), and 29581 (application of multi-layer compression system of the leg). The CPT code billed on August 6 was 99214.

37.     Patient D is a Medicare recipient. For Patient D, Relator performed and charted the services she received, while Aggarwala billed as though he had—Aggarwala did so in order to bill for 100% of the services provided instead of the 85% nurse practitioners are allowed to bill.

38.     These are representative examples of the continued scheme to submit false claims.

39.     By reason of these false or fraudulent claims that Defendants caused to be presented to Medicare and other federal-payor programs, the United States has paid significant amounts of money in reimbursements to Pulse and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

40.     Defendants' fraudulent representations about the identity of the provider as to their claims for payment were material to the government's decision to pay those claims. In a mine run of cases, the Department of Justice has sought to recover money from healthcare providers who misrepresented the identity of the provider regarding their claims to federal-payor programs.

41.     For example, in *United States ex rel. Forester v. Wen Chen*, Case No. 3:18-cv-51 (E.D. Tenn.), the United States Attorney's Office for the Eastern District of Tennessee recovered $285,000 from defendants who charged government healthcare programs the physician's rate for services that were provided by nurse practitioners. In *United States ex rel. Holderith v. One Step Diagnostic, Inc.*, Case No. 12-CV-2988 (S.D. Tex.), the United States Attorney's Office for the Southern District of Texas recovered $1,457,686 from a group of imaging centers for billing Medicare using the NPI number of a physician who had not been involved in the provision of the services rendered.

42.     In 2017, the United States Attorney's Office for the Western District of Oklahoma recovered $580,000 from Dr. Gordon Laird for claims submitted under his NPI for services he did not provide or supervise.

43.     In *United States ex rel. Lee v. Vanguard Health Services, Inc.*, Case No. 3:13-cv-171 (M.D. Tenn.), the United States Attorney's Office for the Middle District of Tennessee recovered $2.9 million based in part on allegations that defendants billed for cardiac rehabilitation therapy provided by a physician who was not properly supervising the services.

## VII.  CLAIMS FOR RELIEF

### FIRST CLAIM

**Violation of the False Claims Act—False Presentment**
**31 U.S.C. § 3729(a)(1)(A)**
**(Against All Defendants)**

44.     Relator incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

45.     This claim is for Pulse, Aggarwala, and Coe's violations of 31 U.S.C. § 3729(a)(1)(A).

46.     As a result of knowingly billing federal payors under Aggarwala's NPI number for services provided by registered nurses and medical assistants that Aggarwala did not properly supervise, Aggarwala, Pulse, and Coe knowingly caused false claims to be presented for payment by the United States through Medicare and other federal-payor programs in violation of 31 U.S.C. § 3729(a)(1)(A).

47.     Specifically, several of the services provided to patients required the billing medical doctor to perform them or to be in the proper vicinity of the individual performing the service in order to supervise. Aggarwala never performed these services or supervised individuals at Pulse's Huntsville clinic who did.

48.     Additionally, when presenting the claims for payment, Pulse and Aggarwala represented that Aggarwala rendered the services, even though a nurse practitioner had actually provided the services. Reporting as though Aggarwala had performed the services caused Medicare, Medicaid, and TRICARE to be overcharged.

49.     Further, Pulse billed Medicare for services provided or supervised by Coe—who is Medicare ineligible—as if provided or supervised by Aggarwala.

50.    By reason of these false or fraudulent claims that Pulse, Aggarwala, and Coe caused to be presented to Medicare and other federal-payor programs, the United States has paid significant amounts of money in reimbursements to Pulse and is entitled to recover treble damages, plus a civil monetary penalty for each false claim.

<u>**SECOND CLAIM**</u>

**Violation of the False Claims Act—False Statements
31 U.S.C. § 3729(a)(1)(B)
(Against All Defendants)**

51.    Relator incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

52.    This claim is for Pulse, Aggarwala, and Coe's violations of 31 U.S.C. § 3729(a)(1)(B).

53.    Through the system Aggarwala set up with Pulse to allow him to alter billing information after services had been rendered by Pulse staff, Aggarwala was able to report incorrect information so Pulse received more taxpayer dollars than allowed by law.

54.    Further, Defendants created false records that indicated that Aggarwala rendered or supervised services that were actually rendered or supervised by Coe.

55.    Accordingly, Pulse, Aggarwala, and Coe knowingly caused false records or statements to be made that were material to getting false or fraudulent claims paid by Medicare and other federal payors, in violation of 31 U.S.C. § 3729(a)(1)(B).

56.    By reason of these false or fraudulent records or statements that Pulse and Aggarwala caused to be made, the United States has paid significant amounts of money in reimbursements to Pulse and is entitled to recover treble damages, plus a civil monetary penalty for each false claim.

## THIRD CLAIM

**Violation of the False Claims Act— Conspiracy to Violate Subparagraphs (A) & (B)**
**31 U.S.C. § 3729(a)(1)(C)**
**(Against All Defendants)**

57.     Relator incorporates by reference each of the preceding paragraphs as if fully set forth in this paragraph.

58.     This claim is for Defendants' violations of 31 U.S.C. § 3729(a)(1)(C).

59.     By arranging Pulse's treatment and billing system and subsequently engaging it in attempt to defraud Medicare, Medicaid, and TRICARE, Defendants have made a concerted effort to take in unearned payments from the federal government and, thereby, perpetrate a fraud against the taxpaying public.

60.     By reason of Defendants' conspiracy to make false claims to and defraud the federal government, the United States has paid significant amounts of money in reimbursements to Pulse and is entitled to recover treble damages, plus a civil monetary penalty for each false claim.

## VIII.   REQUESTED RELIEF

WHEREFORE, Relator requests the Court to enter judgment as follows:

A.     That Defendants are ordered to pay treble the United States' damages, in an amount to be established at trial;

B.     That Defendants are ordered to pay a civil penalty of not less than $11,803.00 and not more than $23,607.00 for each violation of 31 U.S.C. § 3729;

C.     That Defendants are ordered to pay Relator's reasonable expenses, attorney's fees, and costs;

D.     That Relator be awarded the maximum amount allowed under 31 U.S.C. § 3730(d); and

E.     Any other relief that this Court deems proper.

## JURY TRIAL DEMAND

Under Rule 38(b) of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: December 20, 2021

Respectfully submitted,

*/s/ Griffin S. Rubin*

**Kevin N. Colquitt**
TX Bar No. 2407204
knc@sbaitilaw.com
**Griffin S. Rubin**
Texas Bar No. 24121809
gsr@sbaitilaw.com
J.P. Morgan Chase Tower
2200 Ross Avenue, Suite 4900W
Dallas, TX 75201
T: (214) 432-2899
F: (214) 853-4367

*Counsel for Relator*